## 29679. HALL v. HOPPER.

HILL, Justice.

James F. Hall appeals the denial of his petition for habeas corpus, enumerating 17 alleged errors. Petitioner is presently serving three consecutive five year sentences, two for burglary and one for arson.

On May 19, 1969, he was indicted for the March 16, 1969, burglary of Cason's Drug Store. His March 5, 1970, trial on this charge resulted in a hung jury and the case was placed upon the dead docket.

On May 21, 1973, he was indicted for the February 9,

1973, burglary of the Long County Pharmacy. His July 25, 1973, trial on this indictment resulted in the first five year sentence.

On the day following this later trial, he pled guilty to the 1969 burglary indictment and to a July 2, 1973, indictment for arson, on which the two other five year sentences were imposed.

1. On this appeal, petitioner contends that his July 26, 1973, guilty plea to the March 16, 1969, burglary should be set aside because the four year statute of limitation on burglary had run and because of denial of speedy trial.

In criminal cases, the statute of limitation runs (subject to special circumstances) from the time of the criminal act to the time of indictment. Code Ann. §§ 26-502 through 26-504; Code Ann. § 26-401 (o). Cf. Code § 27-601, not from time of the act to time of the trial.

Petitioner's reliance on the statute of limitation is without merit. He was indicted on May 19, 1969, for the March 16, 1969, burglary.

The constitutional provisions requiring and guaranteeing "speedy trial" generally become operative when the accused is charged (Code Ann. § 2-105), i.e., when the prosecution commences (Code § 1-806).

The record before us does not indicate whether petitioner was arrested before or after the May 19, 1969, indictment.

The mistrial occurred on March 5, 1970. From that date to July 26, 1973, the first burglary case was ripe for trial (i.e., no motion for new trial or appeal was pending).

In *Treadwell v. State,* 233 Ga. 468 (211 SE2d 760), this court examined Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101), where the Supreme Court of the United States identified four factors which it stated a court should weigh in deciding speedy trial questions, as follows: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. Cf. *Hughes v. State,* 228 Ga. 593 (1) (187 SE2d 135). Regarding prejudice to the defendant, the court identified three interests to be served by the speedy trial requirement: (1) to prevent oppressive pre-trial incarceration, (2) to minimize anxiety and concern of the

accused, and (3) most importantly, to limit the possibility that the defense will be impaired.

The delay involved in the case before us is strikingly similar to Barker.

In Barker v. Wingo, supra, Barker was arrested shortly after July 20, 1958, was indicted September 15, 1958, and was convicted October 9, 1963, a delay of over 5 years. The reason for the initial delay was that the prosecutor was seeking to obtain a valid conviction against a confederate so as to be able to compel the confederate to testify at Barker's trial. After several trials and appeals the confederate was finally convicted, but the investigating officer became ill, which further delayed Barker's trial for some seven months more. The Supreme Court viewed this illness as a valid reason for delay, viewed the tactic of trying the confederate first as permissible but viewed the four year delay awaiting valid conviction of the confederate as too long.

Barker did not object to the delay until February 12, 1962, a period of about 3 1/2 years, at which time he moved to dismiss the indictment but did not move for a speedy trial. Thereafter, he did not object to continuances sought by the prosecutor during the next year. After March 1963, when his confederate's convictions became final, Barker objected to continuances sought and obtained on the ground that the investigating officer was ill. He did not raise the speedy trial defense as such until the trial commenced in October, 1963.

Barker showed only minimal prejudice to himself. None of his witnesses were shown to be unavailable. He spent the first 10 months in jail, after which he was free on bond, yet under a four year cloud of suspicion and anxiety.

In the absence of serious prejudice, the Supreme Court remanded Barker to serve his sentence because that court concluded he did not want a speedy trial. He hoped his confederate would be acquitted and that he would never be tried.

From Barker, we conclude as follows: an extraordinarily lengthy delay (factor one—five years), without valid reason (factor two—four years tactical delay), is overcome where no prejudice greater than 10 months in jail plus 4 years anxiety and suspicion is shown

(factor four), and where the defendant did not want a speedy trial (factor three), i.e., where the defendant hoped that the delay would work to his benefit and that he would never be tried.

In the case before us, the extraordinary delay without reason shown by the record (see *Treadwell v. State,* supra) is overcome when no prejudice is shown and the petitioner did not want a speedy trial (he hoped he would never be tried). Although petitioner may have lived in anxiety and under a cloud of suspicion for over four years, he preferred that situation to going to trial. He does not appear to have been incarcerated for the 1969 burglary, at least not from the first mistrial in March 1970 until at least May 21, 1973 (so that his incarceration, if any on this charge, was comparable to Barker's 10 months).

He pled guilty (thereby acknowledging his guilt, the state's ability to prove his guilt, and the advantage to him of plea bargaining), and raised the speedy trial issue for the first time in this habeas corpus proceeding. At the habeas hearing, petitioner's attorney was unable to point to any way in which petitioner was prejudiced or his defense was impaired by the delay.

We conclude that petitioner did not want a speedy trial. Barker v. Wingo, supra. The trial court did not err in overruling this ground of the petition.

2. Petitioner contends that his two guilty pleas (the 1969 burglary and the 1973 arson) were improperly induced by the ineffectiveness of court-appointed counsel. He alleges ineffectiveness in that he was denied a speedy trial as to the 1969 burglary and in that a motion to suppress evidence could have been made in the arson case as one had been made in the 1973 burglary trial. (The speedy trial contention has been resolved above.)

The evidence shows that following his conviction on July 25, 1973, petitioner, his wife and his attorney conferred at length on July 26 regarding pleading guilty to the other two charges. They discussed moving to suppress evidence in the arson case. (The petitioner had discussed the 1973 burglary with the district attorney in the absence of defense counsel under circumstances which suggested hope of benefit to petitioner; i.e., lack of

voluntariness. As for the arson, the circumstances were not analogous.) Petitioner's attorney explained that success on the motion to suppress the confession made to the sheriff regarding the arson was very doubtful and further that the evidence against petitioner as to the arson was such that petitioner stood a substantial likelihood of being convicted. See McMann v. Richardson, 397 U. S. 759, 770 (90 SC 1441, 25 LE2d 763).

Petitioner also contends that his attorney coerced him into pleading guilty by threatening him with imposition of the maximum sentences for burglary and arson. The court below found that petitioner was told by his attorney the maximum sentences he *could* receive upon trial by jury.

Upon entering the two guilty pleas, petitioner stated, inter alia, that he was satisfied with the services of his attorney.

Petitioner's two pleas of guilty were knowingly and voluntarily entered and his attacks upon them are without merit.

3. The majority of petitioner's enumerations of error relate to his 1973 trial and conviction for burglary. Of these, one asserts that he was denied the right of appeal.

The court below made the following findings of fact: Petitioner's court-appointed trial counsel did not advise petitioner of his right to appeal the jury conviction with the assistance of appointed counsel. At the habeas hearing, the attorney explained that he believed the trial record was free of reversible error, and that petitioner did not manifest dissatisfaction with the five year sentence. As noted above, petitioner pled guilty to additional charges the day after his conviction and jury sentence.

Petitioner learned of his appellate rights within two weeks of conviction and sent his wife to see the attorney about an appeal. Because of the explanation given above, the attorney did not seek appellate review.

In denying this ground of the petition, the court below considered *Brown v. Holland,* 228 Ga. 628 (9) (187 SE2d 246), where the defendant sent his wife to see his attorney about appealing the case and the attorney advised her there were no grounds for appeal. In *Brown,* this court said that the advisability of appealing a

conviction is a question to be determined by appointed counsel.

The court below also considered *Thornton v. Ault,* 233 Ga. 172 (210 SE2d 683), where the facts were that appointed counsel had no discussion with the defendant with regard to appeal because counsel was of the opinion that an appeal would be an exercise in futility. In *Thornton,* this court held that the advisability of appealing a conviction was not a question to be determined by appointed counsel. (See the more recently decided cases of *Holloway v. Hopper,* 233 Ga. 615 (212 SE2d 795) and *Moore v. Hopper,* 233 Ga. 894 (213 SE2d 866)).

In *Brown v. Holland,* supra, decided in 1972, this court affirmed the judgment of the trial court remanding the petitioner to custody. In *Thornton v. Ault,* supra, decided in 1974, this court reversed the judgment of the trial court and ordered the appointment of counsel to pursue an out of time appeal.

Having considered these two decisions, the court below rightly followed the earlier one, *Brown v. Holland,* pointing out that *Brown* was a full bench decision which was not expressly overruled by *Thornton v. Ault.* In support of its decision, the court below cited Code § 6-1611, the "full bench rule," which reads as follows: "A decision rendered by the Supreme Court prior to the first day of January 1897, and concurred in by three Justices, cannot be reversed or materially changed except by the concurrence of at least five Justices. Unanimous decisions rendered after said date by a full bench of six shall not be overruled or materially modified except with the concurrence of six Justices, and then after argument had, in which the decision, by permission of the court, is expressly questioned and reviewed; and after such argument, the court in its decision shall state distinctly whether it affirms, reverses, or changes such decision."

This provision of the Code was first enacted in 1896 (Ga. L. 1896, p. 42), shortly after the size of this court was increased from three to six members. The provision was not changed when the membership of this court was increased to seven by the Constitution of 1945.

Under the Constitution of 1877, as amended in 1896,

it was provided that "The [supreme] court shall have power to hear and determine cases . . . under such regulations as may be prescribed by the General Assembly." The Constitution of 1945 provides (Code Ann. § 2-3707): "The Supreme Court shall have power to hear and determine cases when sitting in a body, under such regulations as may be prescribed by it."

In *Ward v. Big Apple Super Markets,* 223 Ga. 756, 764 (158 SE2d 396), the court agreed that Code Ann. § 6-1611 "has not had legal existence since the adoption of the 1945 Constitution because . . . Code Ann. § 2-3707 expressly withdrew the power of the General Assembly to enact regulations governing the manner in which this court could hear and determine cases . . ." However, in *Ward* the court stated that it would, as a matter of policy, continue to require a unanimous decision to overrule a unanimous decision.

Since *Ward,* that policy has encountered difficulty in administration. See Felton, Justice, dissenting in *Atlanta Coca-Cola Bottling Co. v. Gates,* 225 Ga. 824, 842 (171 SE2d 723); see also Grice, Presiding Justice, concurring specially in *North Ga. Finishing v. Di-Chem,* 231 Ga. 260, 266 (201 SE2d 321); see also Gunter, Justice, dissenting in *Reece v. Pettijohn,* 229 Ga. 619, 620 (193 SE2d 841), citing an article by D. Meade Field and Lloyd Sutter, 19 Mercer L. Rev. 368, where it is said that Georgia's full bench rule . is not recognized or followed "in the courts of any nation on earth which is sufficiently civilized to have a judicial system."

The difficulty in administration of the unanimity rule is actually not a "difficulty" but is a self-evident and self-enforcing principle, to wit: a majority vote of the members of this court controls the ruling and judgment in each case. Where the majority of this court, in the case before it, votes not to follow the rule that "The responsibility in determining whether to appeal [a criminal conviction] rests upon counsel" (see *Holloway v. Hopper,* supra), then that becomes the ruling of the court. Thereafter, that later ruling will be followed (see *Moore v. Hopper,* supra).

Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. *Cobb*

*v. State,* 187 Ga. 448, 452 (200 SE 796). It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that stability must give way to justice to the prisoner, then justice prevails. The "full bench rule" has been repealed.

That repeal occurred some time ago. The effective date of repeal is immaterial. The bench and bar are entitled to notice of its repeal, and we thank the court below for bringing this matter to our attention.

The judgment of the court below must be reversed and remanded with direction that the convicting court enter an order providing for the appointment of counsel for an appeal, to be filed and prosecuted at this time, of the original conviction of burglary entered July 25, 1973.

The remaining enumerations of error in this case will be resolved upon such appeal or are rendered moot by the decision reached in this case.

*Judgment reversed with direction. All the Justices concur, except Nichols, C. J., Jordan and Ingram, JJ., who concur in the judgment only.*

SUBMITTED FEBRUARY 24, 1975 — DECIDED JUNE 2, 1975 — REHEARING DENIED JULY 1, 1975.

James F. Hall, III, *pro se.*

Arthur K. Bolton, Attorney General, John B. Ballard, Jr., for appellee.