70754. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. JOINER INTERNATIONAL, INC. et al.
(339 SE2d 284)

Beasley, Judge.

The facts in this case are undisputed. On June 18, 1982 a combine, owned by Joiner but held by Mitchell in bailment, was damaged by fire on Mitchell's farm. Joiner filed a negligence action against Mitchell to recover damages to the combine. Mitchell, in turn, made a demand upon his insurer, Georgia Farm Bureau Mutual Insurance Co., to furnish a defense to the negligence action pursuant to his farmowner's policy. Insurer petitioned for declaratory judgment asserting that the policy at issue does not afford coverage for bailed property, that is, the combine, and that it is therefore under no duty to defend. On February 25, 1985, after a bench trial, the court concluded that insurer is obligated under the policy to defend Mitchell from Joiner's claim. Insurer appeals.

This is a Broad Form Farmowners Policy insuring the farmowner against losses from certain specified perils to particularly described property and interests (Section I) and against personal liability (Section II). The latter is denominated "comprehensive" but does carve out some exclusions.

The General Conditions set out at the beginning of the policy contains definitions which apply to some of the terms used throughout the policy and incorporates additional definitions which appear near the end of the policy. The additional definitions are of different terms except that the definition of "occurrence" is repeated verbatim.

Under Section I the policy covers the farm dwelling ("including" additions, equipment, and materials for construction, alteration or repair), appurtenant private structures ("including" named private structures and "not includ[ing]" structures used for named purposes or rented to others), unscheduled personal property while on the premises and, to a limited amount, while away from the premises (but it "does not include" a number of things such as "farm personal property usual and incidental to the operation of the farm"), living expenses due to loss by peril, and one shed.

The twenty types of perils insured against are listed and their

"meaning" is given as to each peril. It is described as "including" certain things and, by the use of "except," "excluding," "unless," "only," or "other than," excluding certain things. Only one type of peril, "fire and lightning," is given no further elucidation here. But in the additional definitions portion of the policy Section II, which is incorporated into Section I, the term "fire hazard" is defined. It "includes property damage to any insured premises away from the farm, and to house furnishings therein if such property damages arises out of (1) fire, (2) explosion, or (3) smoke or smudges caused by sudden unusual and faulty operation of any heating or cooking unit." Thus the peril listed simply as "fire" is amplified.

Throughout the two Definitions portions of the policy, what the term being defined "means" is set out. In two instances, however, instead of the word "means," the word "includes" is used. The first is "farming," in the General Conditions; " 'farming' includes the operation of roadside stands maintained principally for the sale of the insured's farm products." The second is "fire hazard," in the additional definitions portion; " 'fire hazard' includes" what has been quoted earlier.

Thus we construe the word "includes" in its ordinary usage, which is referred to by this court in *Big Bear Ranches v. Ga. Farm &c. Ins. Co.*, 169 Ga. App. 307, 309 (312 SE2d 378) (1983): The term "is ordinarily a term of enlargement, not limitation, *United States v. Gertz*, 249 F2d 662, 666 (6) (9th Cir. 1957), used to signify that something else is comprehended beyond the general language preceding the term. [Cit.] See cases collated Vol. 20A, Words and Phrases, Include, p. 144 et seq." The context and wording of the policy made it clear that the term "including" or "includes" is used as a term of enlargement. The entire contract must be considered when interpreting it. *Guarantee Trust Life Ins. Co. v. Davis*, 149 Ga. App. 826, 828 (256 SE2d 76) (1979), aff'd in part, rev'd in part, 244 Ga. 541 (261 SE2d 336) (1979).

The court in *Big Bear* reasoned that giving the word "including" its ordinary meaning would bring about an absurd result. However, it appears that the opposite would be the result here. If it is a term of limitation, the only fire hazard losses insured against under the peril "fire" would be to insured premises away from the farm (such as a residence in which the farmer may be temporarily residing) and, if attributable to certain causes, to the house furnishings in those premises.

The test in construing an insurance policy "is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Nationwide Mut. Fire*

*Ins. Co. v. Collins*, 136 Ga. App. 671, 675 (222 SE2d 828) (1975). If the term "including" were given its ordinary meaning rather than that attributed to it in *Big Bear*, the policy would cover loss from fire as a hazard or peril to the property and interests covered in the description set out in Section I; as to the hazard or peril designated "fire," it would include certain property damage away from the farm.

This construction would not lead to the result feared in *Big Bear*; it would not restore coverage that is specifically and expressly excluded. Subsection (j) excludes from the farmer's comprehensive personal liability coverage two types of property damage. One is property damage to his own property. The second is property damage to the property of others which he is occupying, using, or controlling. As to his own property, personal liability arising from any peril is excluded. As to others' property (given the inclusive meaning of the word "includes"), only the peril of fire is insured against; all of the other enumerated perils are not. That is to say, if the insured is occupying or using or controlling another's property and due to his negligence it is damaged by explosion or falling objects or collapse, for example, the loss would not be covered.

Such a construction of the word "includes" also allows the term "fire hazard" to have the same meaning when used in connection with the fire peril in Section I as it does when used in Section II. This obeys the principle that "[t]his court must avoid a construction that does not give all portions of a policy meaning and effect. [Cit.]" *Big Bear*, supra at 310.

With respect and great deference to the earlier consideration by this court of the policy provisions here subject, we overrule the holding arrived at in *Big Bear*, supra, and agree with and affirm the trial court in this case.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Birdsong, P. J., concurs in the judgment only. Deen, P. J., dissents.*

DEEN, Presiding Judge, dissenting.

In my opinion, there is no real or rational reason to overrule *Big Bear Ranches v. Ga. Farm &c. Ins. Co.*, 169 Ga. App. 307 (312 SE2d 378) (1983), as the two cases differ sufficiently in their facts to warrant a result in the instant case different from that in *Big Bear Ranches*.

The word "includes" has two distinct meanings. The first, and more usual, meaning is that something is added to the preceding language, either by defining/specifying the preceding term or by adding something not *necessarily* implied therein; it is thus ordinarily a term of *enlargement*, and is so used in the instant case. On the other hand, in the context of a prior or separate listing of coverages or exclusions,

"includes" may limit or restrict the coverage to only certain items and thus be a term of *limitation*, as was appropriate in *Big Bear Ranches*. See 20A Words & Phrases, 1985 Pocket Part, and cases cited therein. In this matter, as in so many instances of interpretation, it is reasonableness that is the key. As perceptively and pointedly expressed, "care should be taken not to permit the ring of rhetoric to overpower the rule of reason."[1]

According to Lord Denning, when addressing the court, the most useful tool for an advocate to use "is the one by which you point out that the word or phrase is capable of more than one meaning . . . and then to invite the judge to take one that leads to a just and desirable result." He further admonishes judges that they "should not be a mechanic in the powerhouse of semantics, [but] should be the man in charge of it."[2] We have in the case *sub judice* two options as to definitions, and the pathway leading to reason and justice is attained in both *Big Bear Ranches* and the instant case. To overrule the latter case would be unwise, as it would limit the court's resources of reason and tools of flexibility in seeking an equitable and just solution while we decide the many disputes in cases in which we correct errors of law. "Reviewing courts whose sole province is to correct errors of law should not enter the forum of facts. . . ." *Hunt v. State*, 8 Ga. App. 374, 377 (69 SE 42) (1910).

I must respectfully dissent.

DECIDED NOVEMBER 20, 1985 —
REHEARING DENIED DECEMBER 16, 1985 — 

*Morton G. Forbes, Hermann W. Coolidge, Jr.*, for appellant.
*Bobby T. A. Jones, Glen A. Cheney*, for appellees.

---

[1] Ronald K. L. Collins, "The Problem of Penalties Clouds Issue of Abortion," *The National Law Journal* (July 1985).

[2] Baron Alfred Thompson Denning, of Whitchurch in the County of Hampshire, "The Price of Freedom," 41 *A.B.A. Journal* 1011 (1955).