70593. THOMASTON MILLS, INC. v. KIERBOW.
(339 SE2d 361)

CARLEY, Judge.

At the time that appellee-claimant in the instant workers' compensation case was injured, she was already receiving social security benefits. Because appellee could earn only approximately $5,000 per year and still retain her eligibility for the full social security benefits to which she was otherwise entitled, she worked for appellant-employer only until such time as her earnings had reached that threshold amount. When appellee did work, however, she was employed full-time. Consequently, she would generally work full-time over a pe-

riod of several months, after which she would remain unemployed for the balance of the year.

Appellee injured her knee on January 5, 1981. She had been working 40 hours per week since September of 1980 and continued to work until February 12, 1981, when she became disabled. Appellee tried to return to work in September of 1981, but could work only three hours per day. On September 25, 1981, she became totally disabled. The administrative law judge (ALJ) awarded appellee compensation in the amount of $110 per week, or a total of $5,720 per year. According to the ALJ's award, appellant had argued "that since claimant was employed only part-time when she had her work related injury . . . she should not receive workers' compensation benefits of more than $5,000 annually because of her 'as needed contract' with the employer." However, the ALJ had "not agree[d] with this argument. The statute governing average weekly wage does not provide for such a limitation."

The award of the ALJ was made the award of the Full Board. The superior court affirmed the Full Board. Appellant applied to this court for a discretionary appeal from the superior court's order of affirmance. Appellant's application was granted in order that we might address the applicability of OCGA § 34-9-260 under such facts as are presented in the instant case.

OCGA § 34-9-260 provides that "the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation. . . ." The statute further provides for certain methods by which the "average weekly wages" of an injured employee "shall be determined. . . ." OCGA § 34-9-260 (1) provides: "If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. . . ." It is this provision that the ALJ used to compute the compensation awarded to appellee. Subsection (2) of OCGA § 34-9-260 is inapplicable here. However, OCGA § 34-9-260 (3) provides that "[i]f either of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wage of the injured employee shall be used. . . ." It is this provision that appellant contends is the applicable authority for calculating appellee's "average weekly wage." Apparently, because appellee earned the entirety of her wages by working only during a period of several months, appellant would have her compensation based upon an entirely fictional average "full-time weekly wage" based upon approximately 22 hours of work per week, the average number of hours per week appellee would have been required to work during an entire year in order

to earn her $5,000.

It is undisputed that appellee worked for appellant from September 1980, until February 12, 1981, a period in excess of 13 weeks. The provisions of OCGA § 34-9-260 (1) are unambiguous. In such circumstances, the employee's "average weekly wage *shall be* one-thirteenth of the total amount of wages earned in such employment during the 13 weeks." (Emphasis supplied.) Notwithstanding appeals to "policy" considerations, there is nothing in the statute itself which lends support to the assertion that subsection (1) of OCGA § 34-9-260 "cannot reasonably and fairly be applied" in the instant circumstances, which otherwise clearly fall within its ambit. This is a court for the correction of errors of law. As such, we are bound to apply the plain language of pertinent statutes as written. Issues of policy are properly addressed to legislative bodies.

Moreover, OCGA § 34-9-260 (3) specifies that "the full-time *weekly* wage of the injured employee shall be used." (Emphasis supplied.) Under appellant's interpretation, appellee's compensation would ultimately be based upon the wages that she received for the *entire calendar year*. There is nothing within the statutory framework of OCGA § 34-9-260 to support this artificial leap from a week to a year as the appropriate period for determining the applicable wage base. All of the statutory language relates to the *weekly* wage of an employee. For example, OCGA § 34-9-260 (6) provides as follows: "The average weekly wage of a member of the Georgia National Guard serving on state active duty pursuant to an order by the Governor shall be seven-thirtieths of the monthly pay and allowances of the individual computed in accordance with Code Section 38-2-250." Thus, the statute clearly contemplates that when injured while on duty, a National Guard member, who ordinarily serves on active duty only on weekends and two weeks during the summer, will be compensated for the injury on the basis of a full week's wages. Likewise, in the instant case, appellee's compensation should be based upon the average weekly wage which she had been receiving for several months prior to the date of her injury without regard to any average based upon a full calendar year.

Computation of appellee's benefits under OCGA § 34-9-260 (1) is consistent with the overall objectives of our Workers' Compensation Act and is not a "windfall." The ALJ and the Full Board correctly applied the unambiguous provisions of OCGA § 34-9-260 (1) to the instant facts. The superior court affirmed, and so must we.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Sognier, Pope and Benham, JJ., concur. Deen, P. J., Birdsong, P. J., and Beasley, J., dissent.*

DEEN, Presiding Judge, dissenting.

In seeking the intent of the legislative enactment where a "word or phrase is capable of more than one meaning," we must "take one that leads to a just and desirable result." *Georgia Farm Bureau Mut. Ins. Co. v. Joiner*, 177 Ga. App. 233 (339 SE2d 284) (1985). Courts must be just before being generous. "[S]tability must give way to justice . . . ." *Hall v. Hopper*, 234 Ga. 625, 632 (216 SE2d 839) (1975). *Fiat justitia ruat caelum*.

"[W]hen literal interpretation would lead to absurd or mischievous consequences or thwart manifest purpose," we do not follow the exact letter of the law. *Clark v. Murray*, 141 Kan. 533 (41 P2d 1042) (1935). Being overzealous in literalism, while ignoring the spirit of the law, is at best unwise. " 'Letter-of-the-law pecksniffery' is a juridical sin." *Lowe v. Payne*, 130 Ga. App. 337 (203 SE2d 309) (1973).

OCGA § 34-9-260 (1) and subsection (3) of OCGA § 34-9-260 must be read *in pari materia*. Without citing any case law, the majority opinion in effect holds that a part-time employee should receive the same compensation benefits as a full-time employee, which cannot be the law. I would adopt the holding in *Brisendine v. Skousen Bros.*, 48 Ariz. 416 (62 P2d 326, 330) (1936): "For the foregoing reasons, we hold that the compensation of an employee who has been employed for a period of more than one month, but whose employment, by its nature and the terms thereof, is not for a fixed number of hours per day, week nor month, but intermittent in its character, is entitled to compensation only on the basis of the wages actually earned during the month."

I concur fully in the dissenting opinion of Presiding Judge Birdsong and express these additional thoughts, as the judgment of the trial court in this instance should be reversed.

BIRDSONG, Presiding Judge, dissenting.

Under the majority's decision, this claimant is getting a windfall of *$5,720* per year in workers' compensation benefits when she actually earned no more than *$5,000* per year by working.

According to the majority's decision, her compensation is based on imaginary full-time work for 52 weeks per year, when it is clear she was semi-retired and worked only a few months of the year.

This is patently in violation of OCGA § 34-9-261, which provides that an employee shall be paid in workers' compensation benefits "a weekly benefit equal to *two-thirds* of the employee's average weekly wage." (Emphasis supplied.)

No one has ever suggested, until now, that an employee should under any theory receive more in workers' compensation benefits than she ever earned or would have earned by working.

The majority apparently regrets this unfair and unreasonable re-

sult, but says it has no choice because Mrs. Kierbow worked the whole of thirteen weeks preceding her injury, under OCGA § 34-9-260 (1).

The majority has ignored OCGA § 34-9-260 (3) which clearly states: "If either of the foregoing methods [§ 34-9-260 (1) and (2)] *cannot reasonably and fairly be applied*, the full-time weekly wage of the injured employee shall be used." (Emphasis supplied.) As for what is the "full-time weekly wage," Rule 260 (b) of the Workers' Compensation Board provides: "*Unless the contrary appears*, it is assumed that the normal workweek is five days, that the normal workday is eight hours, and that the employee's daily wage is one-fifth the weekly wage. . . ." (Emphasis supplied.) Rule 260 thus assumes a claimant worked full-time but allows us to figure the full-time weekly wage as it appears in fact.

In this case, the "*contrary appears*" (Rule 260 (b)), which is that this semi-retired claimant worked part-time 40 hours per week for only a few months of the year and otherwise did not work at all. From this it can fairly and reasonably be calculated that her weekly wage for the year, i.e., her *full-time* weekly wage, is based on 22 hours per week.

The thirteen-weeks rule in § 34-9-260 (1) and (2) is merely a mechanical formula which is the *usual* best measure of a claimant's actual loss, but the legislature clearly provided in section (3) that it is not to be used if it reaches an unfair and unreasonable result.

*Carter v. Ocean Accident &c. Corp.*, 190 Ga. 857, 860 (11 SE2d 16) attempts to explain the philosophy underlying compensation for part-time work. The Supreme Court said: "The one high aim constituting the foundation of this law is compensation for an injured employee in proportion to his loss on account of the injury. That loss is deprivation of future earnings, and is measured by his proved earning capacity. It of necessity looks to the future. *Under the statute authority is given to consider the past only in so far as it reveals a regular earning capacity*. We think the fairest yardstick by which his compensation to cover his injury can be measured is what he was able to earn and was actually earning when the misfortune came upon him. Good workmen look to the future with hope of advancement and increased earnings, and the loss sustained by the employee is deprivation of future earnings on the basis of his earning capacity as demonstrated by the regular wage received at the time of the accident." (Emphasis supplied.)

In other words, the Act seeks to compensate the worker for his *actual* loss. The worker's history over the past thirteen weeks preceding his injury is important "only insofar as it reveals a regular earning capacity." Id. It is not intended to give a windfall bonus of full compensation to a worker who worked thirteen weeks prior to injury al-

though, for example, he may not work at all the rest of the year.

The use of statutory formulae for figuring the compensation of a person who is truly a part-time worker, that is, who chooses to work only part-time or chooses to work a part-time job or at seasonal work and in effect has no full-time earning capacity, has been criticized by Larson, where it results in an award disproportionately higher than the employee ever earned or intended to earn. 2 Larson, Workers' Compensation Law, § 60.21 (c), p. 10-585. Such cases, says Larson, "serve to emphasize the fact that it sometimes is as important to reject as it is to accept a brief recent-wage experience, if a realistic approximation of future wage loss is to be obtained."

Where courts have figured awards to a part-time employee far in excess of his actual earnings, based on a full-time wage formula, Larson says at p. 10-591: "It is difficult to see the justification of these cases that knowingly inflate benefits beyond what the claimant intended to earn in the past and presumably intended to continue to earn in the future, *as long as there is any sort of residual or catchall clause that is available when the more mechanical formulas cannot fairly be applied. . . .* [T]he purpose of the wage calculation is not to arrive at some theoretical concept of loss of earning capacity; rather it is to make a realistic judgment on what the claimant's future loss is in the light of all the factors that are known. [Fn.]" (Emphasis supplied.)

In section (3) and Board Rule 260, the legislature provided, in Larson's words, the "residual or catch all clause that is available when the more mechanical formula cannot be applied."

In saying it is forced to compensate this claimant by applying § 34-9-260 (1), the majority suggests that the legislature address the matter in policy. The legislature has already done this, in section (3) and Board Rule 260. I am therefore respectfully but thoroughly mystified as to why the majority insists it should award this claimant a clear windfall under section (1).

What the majority has done is to give a part-time worker (who, herself, chose to work part-time) the same benefits available to the full-time worker. This is patently unfair to the full-time worker.

I respectfully dissent. I am authorized to state that Presiding Judge Deen and Judge Beasley join in this dissent.

DECIDED DECEMBER 4, 1985 —
REHEARING DENIED DECEMBER 20, 1985 —

*Susan V. Sommers*, for appellant.

*Johnny B. Mostlier,* for appellee.