825 P.2d 958

**SOUTHWEST RESTAURANT SYSTEMS, Petitioner Employer,**

**Transamerica Insurance Co., Petitioner Carrier,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Iola Mae Swenor, Respondent Employee.**

**No. 1 CA–IC 90–131.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 19, 1991.

Review Denied March 17, 1992.

Long, Lester & Lundmark, P.A. by R. Todd Lundmark, Phoenix, for petitioners.

Anita R. Valainis, Chief Counsel, the Industrial Com'n of Arizona, Phoenix, for respondent.

Ely, Bettini & Ulman by Ellen E. Hendrickson, Phoenix, for respondent Employee.

## OPINION

SHELLEY, Judge.

This is a special action review of an Arizona Industrial Commission award adopting the presumptive average monthly wage. The dispositive issue is whether the Administrative Law Judge had discretion to disregard actual earnings during the thirty days before the industrial injury because respondent employee (claimant) intended to limit her future income to avoid having her Social Security benefits reduced. We conclude that the Administrative Law Judge lacked such discretion and, accordingly, affirm the award for the presumptive average monthly wage.

On June 25, 1989, claimant, a waitress, injured her left shoulder at work. Petitioner carrier (Transamerica) accepted compensability. Transamerica initially recommended an average monthly wage of some $1,130 based upon earnings of $10.50 an hour for twenty-five hours a week. It subsequently recommended an average monthly wage of approximately $850 based upon claimant's average daily earnings from July 5, 1988, through July 31, 1988, and from September 16, 1988, through June 20, 1989. The Industrial Commission accepted this latter recommendation and issued a notice for an average monthly wage of $850.75. Claimant timely protested, and a hearing was scheduled.

At the ensuing hearing, claimant and petitioner employer's bookkeeper appeared. Claimant testified that she was born in April, 1925, and had worked as a waitress at petitioner employer's restaurant for about twenty-three years. She had worked continuously during the thirty days before her injury and had earned $2.00 an hour plus tips of $8.50 an hour. Claimant also testified that the restaurant remained open year-round and that she usually worked throughout the year. She, however, conceded that the volume of work at the restaurant diminished during the summer and

that she could work only two to three days a week.

Claimant also acknowledged that she had begun receiving Social Security retirement benefits in 1988, when she was sixty-two years old, and that these benefits would be reduced if her earnings exceeded specified limits.[1] Claimant testified that because of the reduced volume of work in the summer and the potential reduction in Social Security benefits, she had taken six weeks of unpaid leave during the summer of 1988. She estimated that her total earnings in 1988 were between $8,500 and $9,000. Although claimant may have intended to limit her earnings to avoid having her Social Security benefits reduced, we note that in 1988 she earned $2,451.18 more than the Social Security limit for 1988. By June 25, 1989, the date of the injury, she was already within $256 of the Social Security limit for 1989, and she testified that she had intended to continue to work after June of 1989. Thus, it is not apparent to what extent she intended to limit her earnings to avoid a reduction.

The bookkeeper confirmed that the restaurant employed workers year round, but that all employees worked fewer hours during the summer. According to her records, claimant had earned approximately $1,120 during the month before her injury and about $8,889 from June 26, 1988, through June 25, 1989.

After reviewing post-hearing memoranda, the Administrative Law Judge issued an award establishing an average monthly wage of $1,120.04 based upon claimant's actual earnings during the thirty days before her injury. He justified this finding by adopting the reasoning of claimant's post-hearing memorandum. This award

was affirmed on administrative review. Transamerica then brought this special action.

On review, Transamerica asserts that claimant's actual earnings during the thirty days before her injury are unrepresentative of her future earnings as a waitress because she intended to limit her income to avoid having her Social Security benefits reduced.[2] According to Transamerica, the effect of this award is to treat claimant as if she would have earned some $13,440 in 1989 when she intended to earn much less and actually had earned only $8,571.18 in 1988. Although this argument appears logical and is supported by the leading workers' compensation scholar, we conclude that Arizona Supreme Court authority compels us to reject it.

In Arizona, disability benefits are based on the injured worker's "average monthly wage at the time of injury." A.R.S. § 23–1041.A. The current version of the statute, however, does not define "average monthly wage." Rather, it defines "monthly wage" to mean the average wage paid during and over the month in which the employee was killed or injured. A.R.S. § 23–1041.D.[3]

Although this statute is at best imprecise, this court has recently interpreted it to mean that wages earned during the thirty days before an industrial injury are the presumptive average monthly wage, but the trier-of-fact has broad discretion to use an expanded wage base when the actual earnings during the thirty days before the injury do not realistically reflect earning capacity. See, e.g., Davis v. Industrial Comm'n of Arizona, 134 Ariz. 293, 655 P.2d 1345 (App.1982) (citing Floyd Hartshorn Plastering Co. v. Industrial

1. The earnings limit was $6,120 in 1988 and $6,480 in 1989. 2 Social Security Law and Practice § 28:5 (Supp. Mar. 1991). In 1990, when claimant turned 65, a higher limit applied, which would allow claimant to earn $9,360. Id. § 28:4 (Supp. Mar. 1991). Earnings limits no longer apply from and after the month in which the Social Security recipient turns seventy years old. Id. § 28:7 (1987).

2. Transamerica has abandoned its position at hearing that petitioner employer's business cycle in itself justified using an expanded wage

base. We therefore do not address this question. Jones v. Burk, 164 Ariz. 595, 795 P.2d 238 (App.1990).

3. The statute also provides a separate test for determining the average monthly wage if an employee has not been continuously employed during the thirty days before the industrial injury. See A.R.S. § 23–1041.B (equating average monthly wage with monthly earning capacity as determined by the previous wage of the injured employee or of similarly employed workers).

*Comm'n,* 16 Ariz.App. 498, 494 P.2d 398 (1972)). The justifications for using an expanded wage base include, but are not limited to, seasonal employment, intermittent employment, and unrepresentative wages during the month before the injury. *Elco Veterinary Supply v. Industrial Comm'n of Arizona,* 137 Ariz. 46, 668 P.2d 889 (App.1983).

Transamerica seeks to make a worker's self-imposed limitation of income to avoid a reduction of Social Security benefits another justification for using an expanded wage base. This proposed justification for using an expanded wage base, however, differs from the previously recognized justifications. The latter involve objective limitations to continuous, full-time employment. For example, employment is seasonal only if it can be performed exclusively during a definite season. *Pettis v. Industrial Comm'n,* 91 Ariz. 298, 372 P.2d 72 (1962). In contrast, the proposed justification involves a self-imposed limitation in that the Social Security limit does not prevent full-time work. Rather, it creates an economic disincentive by reducing Social Security benefits by fifty cents for every dollar earned over the annual limit. 2 *Social Security Law and Practice* § 28:2 (1987).

Larson directly supports Transamerica's proposed extension from objective limitations to self-imposed limitations: "The correct treatment of part-time employment draws a distinction between the situation in which the employment itself *or claimant's relation to it* is inherently part-time, and the situation in which the employment and claimant's inherent relation to it are normally substantially full-time." 2 A. Larson, *Workmen's Compensation Law* § 60.20 (1989) (emphasis added). In particular, Larson extends this analysis to a self-imposed limitation on income to avoid a reduction in Social Security benefits:

> The provision of the Social Security Act reducing social security benefits to some extent for earnings over a stated amount is increasingly producing situations in which it is proved or alleged that the claimant deliberately confined his work to a part-time basis to avoid going above the point where his earnings would begin to cut into his social security check. The correct result, of course, is to base benefits on claimant's actual wage....
>
> ....
>
> It is difficult to see the justification of these cases that knowingly inflate benefits beyond what the claimant intended to earn in the past and presumably intended to continue to earn in the future, as long as there is any sort of residual or catch-all clause that is available when the more mechanical formulas cannot fairly be applied. The courts that have produced these decisions have seldom bothered to supply a rationale for their choice. The nearest thing to it is the argument appearing in several Louisiana cases that, regardless of claimant's habitual and settled practice of working a short week, he has by his injury lost the ability to work a full week—and it is ability that counts. The flaw in this reasoning is that the purpose of the wage calculation is not to arrive at some theoretical concept of loss of earning capacity; rather it is to make a realistic judgment on what the claimant's future loss is in the light of all the factors that are known. One of these factors is the established fact of claimant's choice of a part-time relation to the labor market. If this is clear, *and above all if there is no reason to suppose it will change in the future period into which the disability extends,* then it is unrealistic to turn a part-time able-bodied worker into a full-time disabled worker.

*Id.* § 60.21(c) at 10–661 to –668 (footnotes omitted) (emphasis in original).

Judicial decisions from other jurisdictions on this issue have been mixed. *Compare, e.g., Bennett v. Gary Smith Builders,* 271 S.C. 94, 245 S.E.2d 129 (1978) and *Hodges v. Western Piling and Sheeting Co.,* 717 P.2d 718 (Utah 1986) with, *e.g., Thomaston Mills, Inc. v. Kierbow,* 177 Ga.App. 368, 339 S.E.2d 361 (1985) and *May v. U.B.C. Marketing,* 719 S.W.2d 43 (Mo.App.1986). Only one decision of this court, *Baker v. Industrial Comm'n,* 119 Ariz. 102, 579 P.2d 606 (App.1978), has mentioned the Social Security limit in the context of an average monthly wage determination.

**436**

Transamerica cites *Baker* as an example of its contention that "[a]n employee's decision to self-limit his income is a factor to consider in setting his average monthly wage." For the following reasons, we disagree.

In *Baker*, a seasonal worker was injured during the first days of his employment. *Baker*, 119 Ariz. at 103, 579 P.2d at 607. Thus, a presumptive average monthly wage based on continuous employment for thirty days did not apply. Rather, the issue concerned whether a representative monthly wage of a seasonal worker should be averaged over an entire year. *Id.* The *Baker* court reasoned that such an annualization would be proper unless a farm worker had been consistently employed throughout the year in various consecutive seasons. The evidence in the case, however, established that the claimant intended to limit his employment to the specific season during which he was injured because he wanted to avoid a reduction in his Social Security benefits. *Id.* at 104, 579 P.2d at 608.

*Baker*, therefore, would allow a claimant to overcome the objective seasonal limits of the employment in which the injury occurred by demonstrating a history of consecutive seasonal employment throughout the year. In contrast, Transamerica is seeking to overcome objectively unlimited employment by demonstrating that claimant has a history of self-limiting her income. The Arizona Supreme Court, however, has determined that the objective characteristics of the employment are dispositive:

> Petitioner's [date of injury] earning capacity is not to be determined by whether he intended to work steadily in the industry in which he is employed. The test is whether the employment not the worker is intermittent or erratic.

*Miller v. Industrial Comm'n*, 113 Ariz. 52, 54, 546 P.2d 19, 21 (1976). Although *Miller* involved A.R.S. § 23–1041.B, the court subsequently extended this objective standard without regard to the applicability of section 1041.B. *See Stanton v. Industrial Comm'n*, 116 Ariz. 1, 567 P.2d 317 (1977).

We conclude that this supreme court authority forecloses the adoption of Transamerica's position. We accordingly affirm the award. *See, e.g., McKay v. Industrial Comm'n*, 103 Ariz. 191, 438 P.2d 757 (1968).

CONTRERAS, P.J., and EUBANK, J., concur.