## 74629. THOMASTON MILLS, INC. v. KIERBOW.
(363 SE2d 276)

BEASLEY, Judge.

We granted the employer/self-insurer Thomaston Mills, Inc., discretionary appeal from the superior court's affirmance of an award of the State Board of Workers' Compensation to consider the company's contention that it should have been permitted to suspend payments of temporary total disability weekly wage benefits to claimant

Kierbow because she intended to voluntarily retire from the work force.

Kierbow, age seventy-one, chose to take early retirement from Thomaston Mills in 1979 when she was sixty-three. She participated in a retiree program which allowed her to continue to work at the company and earn $5,000 per year to supplement but not jeopardize her social security income until age seventy. In January 1981, she sustained a knee injury but continued to work until she became disabled in February. She returned to work part-time in September but soon became totally disabled. At the time of Kierbow's return, the employer was undergoing a reduction of work force and she was laid off. Kierbow brought a claim for change of condition and was awarded temporary total disability benefits. See *Thomaston Mills v. Kierbow*, 177 Ga. App. 368 (339 SE2d 361) (1985).

After the award she was released to work with restrictions, and the employer offered her a job which she refused. Thomaston Mills then applied to suspend her temporary total disability benefits. The ALJ heard and denied the application. The Board adopted the ALJ's award with one director dissenting in part on the basis that although claimant had established temporary total disability benefits as of the date of hearing before the ALJ, she stated that she no longer intended to work after reaching age seventy even if she were able, and that she had thus taken herself out of the job market as of that date. The dissent concluded that temporary total disability benefits should have been terminated as of her seventieth birthday, with permanent partial disability benefits started based on a previous rating and any payments made as temporary total disability benefits (OCGA § 34-9-261) since her seventieth birthday credited against permanent partial disability benefits (OCGA § 34-9-263). For an explanation of the distinctions, see *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154, 160 (3) (338 SE2d 742) (1985).

Employer urges the position of the dissenting Board member, arguing that the Board award affirmed by the lower court is contrary to law in that allowing a worker who manifestly intends to retire from the work force to continue to receive such benefits after that point is contrary to the Workers' Compensation Act. It analogizes the situation of voluntary retirement to personal injury claims for lost wages and to the circumstance of an intervening force which prevents a claimant from entering the work force.

Even if we accept the company's interpretation of Kierbow's testimony as being unequivocal on the issue of intended full retirement, this would not permit the employer to suspend the payment of benefits under OCGA § 34-9-261.

Thomaston Mills asserts that, as in personal injury cases, the Workers' Compensation Act should take into account the effects of

age and infirmity in determining when to end weekly wage benefits. It argues that Kierbow is now at seventy-one, past retirement age, and has infirmities other than her knee which prevent her from working, which negative factors should be considered in ending her weekly temporary total disability benefits as her wage loss is related to these factors rather than to her work-related injury.

The allegation that claimant's wage loss stems from her age and infirmities other than her compensable injury is mere speculation. The record supports the finding that the inability to work stems from the work injury. The award of the ALJ originally providing for total disability benefits, issued in April 1984, when the employee was sixty-eight, expressly stated that in 1981 an examining orthopedist found that she had a 35 percent physical impairment of the right knee secondary to her lateral cartilage tear at work and another 15 percent physical impairment because of degenerative joint disease caused by her work-related injury. In 1983, this same physician rated claimant as having a 50% permanent partial disability to the right lower extremity caused by her work-related injury. The ALJ found Kierbow to have this 50 percent permanent partial disability caused by her work-related injury.

Moreover, the approach in personal injury cases does not lend itself to the context of workers' compensation. *Brown v. Lumbermen's Mut. Cas. Co.*, 49 Ga. App. 99 (174 SE 359) (1934), while not a precedential opinion, correctly observed that the legislature has endeavored by the workers' compensation law to provide a means by which employer and employee may escape entirely from any troublesome aspect of personal injury litigation through a system by which every employee not guilty of wilful misconduct may obtain at once a reasonable recompense for injuries accidentally received in his employment, without lawsuit and without friction.

Nor can we accept the employer's claim that the intention to retire because of age is such an intervening cause as would permit cessation of benefits. As the record demonstrates, it would be virtually impossible to evaluate an intention to retire under this type of analysis because the decision to retire from the work force is not made in a vacuum. It would be the product of many factors, including but not limited to age, health, and financial status, and, as in this case, any health considerations in retirement would, at least in part if not entirely, stem from the work-related injury.

Fatal to appellant's position is that such policy arguments are misdirected. There is nothing within the statutory framework of the Workers' Compensation Act which provides that the payment of weekly wage benefits be terminated upon retirement from the work force. In fact, "[c]ompensation for total disability is necessarily open-ended according to the terms of the statute, which sets no ceiling on

the number of weeks such benefits may be required to be paid. See OCGA § 34-9-261." *Diers v. House of Hines*, 168 Ga. App. 282 (2) (308 SE2d 611) (1983).

"This is a court for the correction of errors of law. As such, we are bound to apply the plain language of pertinent statutes as written. Issues of policy are properly addressed to legislative bodies." *Thomaston Mills v. Kierbow*, supra at 370. "The [Workers'] Compensation Act constitutes a complete code of laws upon the subject of the rights and remedies of employers, employees, and their dependents. [Cits.] This court can neither rewrite the law nor hedge it about with restrictions not included in it." *St. Paul Fire &c. Ins. Co. v. Miniweather*, 119 Ga. App. 617 (3) (168 SE2d 341) (1969). We are not at liberty to impose any limitations or exceptions upon an employee's statutory right to recover compensation in the absence of a clear legislative intent. *General Motors Corp. v. Hargis*, 114 Ga. App. 143 (1) (150 SE2d 303) (1966).

If the legislature intends that temporary total disability wage benefits are to cease at the end of a person's work-life, it has not said so. Nor has it hinted at any standard of measure for ascertaining such an event. The Workers' Compensation Act is a humanitarian measure which should be liberally interpreted by this Court to carry out that purpose. *Atha v. Jackson Atlanta, Inc.*, 159 Ga. App. 433, 436 (283 SE2d 654) (1981).

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 4, 1987 —
REHEARING DENIED NOVEMBER 24, 1987 — ▮▮▮▮▮▮▮

*Susan V. Sommers, Judith A. Hodges, Alfred A. Quillian, Jr.*, for appellant.
*Johnny B. Mostiler*, for appellee.