## A00A1056. CITY OF ATLANTA v. ARNOLD.

(542 SE2d 181)

RUFFIN, Judge.

The City of Atlanta appeals a judgment affirming an award of workers' compensation benefits to Neal Arnold, a former police officer who voluntarily retired on disability. The City contends that it was entitled to credit for amounts it paid into an employer-funded disability retirement plan. The City further asserts that voluntary retirement, without more, does not prove the occurrence of a change in condition. After review, we agree only with the City's latter contention. We therefore affirm in part and reverse in part.

While on duty and operating a motorcycle, Arnold sustained injuries in an accident on October 25, 1995, and received workers' compensation benefits. About six months later, in April 1996, Arnold's authorized treating physician released him to light duty work, and Arnold returned to work at the police department. Initially, Arnold was assigned to a day shift position involving limited administrative duties. Later, Arnold was reassigned to an office position for the evening shift. His job duties included checking reports, manning the radio room at the beginning of the shift, and distributing reports and walkie-talkie batteries to fellow police officers. At times, his responsibilities entailed some walking when he needed to inventory police vehicles or to retrieve files from a back room.[1]

In November 1996, while still working the day shift, Arnold applied to the City for disability retirement. On July 15, 1997, the City approved Arnold's pension application. Three days later, Arnold quit working for the police department altogether. Arnold testified that it was his preference to go out on disability pension rather than to work any kind of light duty position for the City. Under the disability pension plan, Arnold received his full salary until February 7, 1998, at which time he sought the resumption of workers' compensation temporary total disability benefits.

On May 1, 1998, Arnold filed a request for a hearing on the issue of income benefits. The City then sought to obtain credit for the amount it had paid toward Arnold's disability retirement benefits. At the hearing, the City and Arnold stipulated that under the City's disability pension plan under which Arnold obtained coverage, an employee could qualify for a disability pension despite the availability of a light duty position at the time of the approval of the employee's pension application. The record confirms that Arnold never sought a different position within the police department or a

---

[1] As one physician noted, "[h]e is, of course, capable of desk work and limited physical activities but would be unable to participate in a full and unrestricted level of police activity."

transfer.

The administrative law judge ("ALJ") concluded that Arnold was entitled to a resumption of workers' compensation income benefits from February 8, 1998, and continuing.[2] The ALJ expressly determined: "I find that because the employee voluntarily quit his job with the employer following the approval of his retirement pension based on his disability, that availability or suitability of the employer's light duty job at that time need not be considered." The ALJ denied the City's request for reimbursement. The award was subsequently affirmed by the appellate division of the State Board of Workers' Compensation and by the superior court. The City filed this appeal.

1. The City asserts that the superior court erred in concluding that it could not take credit under OCGA § 34-9-243 (b) for benefits paid under the employer-funded disability retirement pension plan. The Supreme Court of Georgia, however, recently decided this exact issue adversely to the City.[3] The Supreme Court held that while OCGA § 34-9-243 (b) allows credit for a disability plan, it does not allow credit for a disability retirement plan.[4] The Court determined that OCGA § 34-9-243 (b) was not meant to allow credit for retirement benefits, regardless of whether they are paid in the ordinary course of retirement, or for early retirement brought about by disability.[5] Therefore, the City was not entitled to any credit.

2. The City contends that the superior court erred in affirming an award recommencing workers' compensation income benefits after Arnold voluntarily retired.

In all claims for compensation under the State Workers' Compensation Act, "the employee must carry the burden of proof and show that he sustained a disabling injury arising out of and in the course of employment entitling him to compensation."[6] When an injured worker seeks the resumption of benefits, that worker must prove that he has undergone a change in condition.[7] When the record contains some evidence to support a finding that a claimant has undergone a change in condition, that finding will not be disturbed on appellate review.[8]

A change in condition means "solely an economic change in con-

---

[2] In October 1998, Arnold began working part-time for a different employer. For that reason, he was awarded temporary total disability benefits in the amount of $275 per week from February 8, 1998, through October 1, 1998, but temporary partial disability benefits in the amount of $192.50 from October 2, 1998, and continuing.

[3] *City of Waycross v. Holmes*, 272 Ga. 488, 489 (532 SE2d 90) (2000).

[4] Id.

[5] Id.

[6] *Dasher v. City of Valdosta*, 217 Ga. App. 351, 352 (1) (457 SE2d 259) (1995).

[7] *Maloney v. Gordon County Farms*, 265 Ga. 825, 826 (462 SE2d 606) (1995).

[8] *Waycross Molded Products v. McKelvin*, 234 Ga. App. 46, 47 (1) (505 SE2d 826) (1998).

dition occasioned by the employee's inability to work or to continue to work for the same or any other employer, which inability is proximately caused by the accidental injury."[9] In *Maloney v. Gordon County Farms*, the Supreme Court instructed that

> [i]n order to receive workers' compensation benefits based on a change in condition, a claimant must establish by a preponderance of the evidence that he or she *suffered a loss of earning power as a result of a compensable work-related injury*; continues to suffer physical limitations attributable to that injury; and *has made a diligent, but unsuccessful effort to secure employment following termination.*[10]

The City argues that the record lacks evidence that Arnold satisfied the first and third requirements set forth in *Maloney*. The City contends that Arnold did not prove that any loss in his earning capacity was the result of his work-related injury and not the result of his decision to retire. Further, the City asserts that the record is devoid of any evidence to establish that, after termination, Arnold made a diligent but unsuccessful effort to secure employment.[11]

In affirming the award of benefits, the State Board apparently concluded that when an employee retires because of a work injury, that employee is automatically entitled to a resumption of income benefits even if, at the time of retirement, the employee is capable of earning his full wage. Arnold has not offered and we have not found any legal support for this proposition. *Thomaston Mills, Inc. v. Kierbow*,[12] upon which Arnold relies, is factually and legally distinguishable. In *Kierbow*, this Court noted that the statutory framework does not require that "payment of weekly wage benefits be terminated upon retirement from the work force."[13] Although the law does not preclude the receipt of weekly wage benefits after retirement, that does not negate a claimant's burden of proving a change in condition within the meaning of *Maloney* and its progeny. While Arnold's decision to retire from the police force may well have been based upon his injury, the fact remains that Arnold was earning his regular full wage at the time he elected to retire.

---

[9] (Punctuation omitted.) *Maloney*, supra at 826-827.

[10] (Emphasis supplied.) Id. at 828.

[11] The award granted income benefits to Arnold as of February 8, 1998, despite Arnold's admission that he did not start looking for work until March 1998.

[12] 185 Ga. App. 57 (363 SE2d 276) (1987).

[13] Id. at 59; see *Brannon v. Ga. Bureau of Investigation*, 146 Ga. App. 524, 525 (246 SE2d 511) (1978) (although pension benefits may be subject to deduction of workers' compensation payments where so agreed by contract, receipt of a pension does not automatically foreclose the receipt of income benefits under the Act).

In *Wal-Mart Stores v. Harris*,[14] this Court found that an injured worker who rejected her employer's offer for light duty work at her pre-injury wage and instead chose to accept lower paying work elsewhere was not entitled to workers' compensation income benefits. Absent a diminution of earning capacity caused by the work-related injury, an employer is not liable for a wage loss.[15] We see no reason why Arnold's situation should be treated in a different manner.

It is undisputed that Arnold was capable of performing light duty work, that the police department offered him such work at his pre-injury wage, and that the City never withdrew that offer.[16] In fact, Arnold was actually employed in such work at the time he opted to retire.[17] Because the record does not contain evidence to support each of the three requirements needed to establish a change in condition as promulgated in *Maloney*, Arnold was not entitled to the resumption of workers' compensation income benefits. Therefore, we find that the superior court erred in affirming the State Board's determination that Arnold was entitled to income benefits.[18]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2000.

*Susan P. Langford, Bruce P. Johnson*, for appellant.
*Todd K. Maziar*, for appellee.

---

[14] 234 Ga. App. 401, 402 (506 SE2d 908) (1998).

[15] See id.

[16] At the hearing, no evidence was offered to show that Arnold ever notified his immediate supervisor, Sergeant Robert G. Adams, or anyone else that the position provided to him by the police department was inconsistent with his light duty limitations.

[17] See *Burkhart v. Argonaut Ins. Co.*, 239 Ga. 608 (238 SE2d 400) (1977) (change in condition in economic status of employee that is occasioned by inability to work must be proximately caused by the accidental injury).

[18] See *Waycross Molded Products*, supra at 48.