DECIDED DECEMBER 1, 2004 — 

Sexton & Morris, Joseph S. Key, for appellant.
Steven L. Harris, Solicitor-General, for appellee.

A04A0977. GLISSON v. ROOMS TO GO.
(608 SE2d 50)

BARNES, Judge.

Not knowing that she was entitled to receive workers' compensation income benefits for time she lost due to a compensable injury, Phyllis Glisson used more than seven weeks of vacation, personal, and sick leave when she was unable to work because of a work-related injury. An administrative law judge found that Glisson was entitled to temporary total disability ("TTD") income benefits for that time period, but that her employer, Rooms To Go, was entitled to credit for the leave time she used. The appellate division held that Glisson was not entitled to income benefits, and the superior court affirmed. Glisson appealed to this court, and for the reasons that follow, we reverse.

Glisson sustained a work-related injury to her right shoulder in April 2000, for which she received workers' compensation medical benefits. In June 2002, her treating physician assessed her as having a five percent permanent partial disability to her right arm, and she received a lump sum payment for that permanent injury. Glisson sought TTD benefits for the 52.75 days she missed between April 2000 and June 2002, during which time she used all of her accrued vacation and sick leave. In response to that request, Rooms To Go sought credit for temporary total disability payments made to Glisson under a "wage continuation plan" pursuant to OCGA § 34-9-243.

At the hearing before the ALJ, Rooms To Go presented no evidence regarding its leave policies or anything else. Glisson testified and introduced her medical evidence. The ALJ found that Glisson was entitled to TTD benefits, but also found that her employer was entitled to a credit for the leave time Glisson used. Both parties appealed to the appellate division of the workers' compensation board, the employer contesting that Glisson was entitled to income benefits, and Glisson contesting the determination that the employer was entitled to a credit.

The appellate division vacated the ALJ's decision, analyzing Glisson's circumstances as a change in condition under OCGA § 34-9-104 (a) (1). It determined that the employee's use of her leave time constituted an "award" of benefits that established her wage-earning

capacity, and that the employee had the burden of proving that she suffered a subsequent change in her economic condition before she was entitled to TTD benefits. Because she could not show such an economic change, the appellate division reasoned, the employee was not entitled to TTD. And because she was not entitled to TTD, the employer was not entitled to a credit.

Glisson appealed that decision to the superior court, which affirmed it. The court held that "the Appellate Division of the [Board] was correct in their assessment that the intent behind the Act is to limit the employer's liability for a work-related injury to one recovery." Because Glisson received her regular salary (by using up her leave time), the court concluded she was not entitled to TTD benefits for the same time period.

Glisson argues on appeal that the superior court erred in affirming the appellate division's conclusion that she was not entitled to workers' compensation income benefits for the period between April 8, 2000, the date of her injury, and May 31, 2002, because she was entitled to income benefits for the days she missed because of her work-related injury, and because Rooms To Go was not entitled to credit for the leave time she used.

1. The first question is whether Glisson was entitled to TTD benefits, based on her compensable injury. The employer did not dispute that her injury was work-related, and paid her permanent partial disability benefits for a five percent loss of use of her arm.

> The Workers' Compensation Act constitutes a complete code of laws upon the subject, and the recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits. In construing a statute, our goal is to ascertain its legislative intent and meaning. Statutes should be read according to the natural and most obvious import of the language, without resort to subtle and forced constructions, for the purpose of either limiting or extending their operation. When a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it but must construe it according to its terms.

(Punctuation and footnotes omitted.) *Mickens v. Western Probation Detention Center*, 244 Ga. App. 268, 269-270 (1) (534 SE2d 927) (2000).

The appellate division's analysis incorrectly concludes that the employer's use of the employee's leave time, at the employee's instigation, constituted an "award" so that the burden of proving a

subsequent change in condition, and thus entitlement to TTD benefits, shifted to the employee.

A change of condition under OCGA § 34-9-104, which the appellate division found absent, is defined as "solely an economic change in condition occasioned by the employee's inability to work or to continue to work for the same or any other employer, which inability is proximately caused by the accidental injury." (Punctuation and footnote omitted.) *City of Atlanta v. Arnold*, 246 Ga. App. 762, 763-764 (2) (542 SE2d 181) (2000). That analysis has no application to this case, in which the claimant is not contending that her earning capacity is diminished. The claimant in *Arnold*, on the other hand, chose to retire while he was performing light-duty work at his pre-injury wage, and therefore could not prove a change in condition under OCGA § 34-9-104. The burden of proof in the case before us should not have been on the employee to establish a change in condition, and the ALJ properly found that Glisson was entitled to TTD benefits.

This case is unlike *State of Ga. v. Graul*, 181 Ga. App. 573 (353 SE2d 70) (1987) (physical precedent only), in which the claimant used up her leave and then sought workers' compensation income benefits for future lost time. The court analyzed the case as a change in condition, under which the employer had the burden of proof because it unilaterally suspended the claimant's benefits after her leave ran out.

Further, both the claimant in *Graul* and the claimant in *State of Ga. v. Head*, 163 Ga. App. 842 (296 SE2d 157) (1982), were state employees, for whom the state personnel rules applied, which required an employee to use up her leave time before becoming eligible for workers' compensation income benefits. The State Personnel Board Rules and Regulations do not apply in this case.

Further, the State Personnel Board rules when *Graul* was decided required the state to file a form showing that the claimant elected to receive salary benefits in lieu of workers' compensation income benefits. We have no such contractual showing here regarding Rooms To Go's policies regarding the use of leave time in lieu of workers' compensation benefits, as the company failed to present any evidence at the workers' compensation hearing of its leave policies or of anything else.

As Presiding Judge Ruffin so eloquently explains in his opinion, partially concurring and partially dissenting in this case, an employee who is required to forego leave benefits in lieu of receiving workers' compensation benefits sustains an economic injury, because if, for example, she "must miss work due to illness or injury unrelated to her employment, her economic ability to weather the storm is compromised because she used personal leave when she was entitled to

receive workers' compensation income benefits." Therefore, we conclude that Glisson was entitled to TTD benefits.

2. If Glisson is entitled to TTD benefits, the next issue becomes whether her employer was entitled to credit for Glisson's use of her leave time, an issue the appellate division did not reach. The ALJ did consider the issue, however, and determined that "the payment of a salary to Ms. Glisson, even if it was in the form of vacation, sick, or personal leave pay, is a wage continuation plan as contemplated by OCGA § 34-9-243. Accordingly, the employer/insurer is entitled to a credit for those wages paid."

A "wage continuation plan" is a specific plan designed to operate when an employee is entitled to income benefits for a compensable injury. OCGA § 34-9-243 (a) provides, "The payment by the employer . . . to the employee . . . of salary or wages . . . during the employee's disability shall be credited against any payments of weekly benefits due." The claimant argues that she was not paid her wages, but instead used her personal leave time, and nothing in the record shows otherwise.

One treatise on Georgia Workers' Compensation Law quotes another treatise as noting that "credit is usually denied for any kind of sick pay or vacation pay to which the claimant is entitled upon the basis of his past service rather than on the basis of his injury. But see *State of Ga. v. Head*, [supra,] 163 Ga. App. 842." Kissiah's Georgia Workers' Compensation Law, Ch. 20, § 20.04, quoting Larson's Workers' Compensation Law, Ch. 82, § 82.06 (3). In this case, Rooms To Go produced no evidence establishing the terms of Glisson's leave time, and thus failed to meet its burden of proof.

Under Rooms To Go's argument, it would be entitled to credit for Glisson's use of her leave time as a wage continuation plan, although it failed to produce any evidence showing that its compensation to Glisson fell within that category of payments for which it is entitled to receive credit. If this were the rule, then any employer who grants employee leave benefits can avoid having to pay workers' compensation income benefits simply by not telling its employees they may be entitled to them and allowing its employees to use up all of their leave time unwittingly, leaving them at economic risk if they later must take leave for subsequent illnesses or injuries. This result is not intended under the Workers' Compensation Act.

Additionally, "it does not appear that [the employer] ever made an adequate showing as to what portion, if any, of the [income benefits] might have qualified as a 'credit' under OCGA § 34-9-243." *Caldwell v. Perry*, 179 Ga. App. 682, 684 (2) (347 SE2d 286) (1986). See also *Horizon Indus. v. Carter*, 188 Ga. App. 194, 195 (372 SE2d 301) (1988) (Board's refusal to credit employer with alleged overpayments "was not the result of any failure to apply OCGA § 34-9-243 as

a matter of law but instead was based on their finding as a matter of fact that [the employer] had failed to prove entitlement to such an offset"); *St. Paul Fire & Marine Ins. Co. v. Norman*, 173 Ga. App. 198, 202 (2) (325 SE2d 810) (1984), superseded by statute on other grounds, *Carroll v. Diamond Rug & Carpet Mills*, 224 Ga. App. 361, 362 (480 SE2d 374) (1997) (employer denied credit for salary in lieu of compensation for failing to follow procedures in former board rules).

The employer is also not entitled to credit under OCGA § 34-9-243 (b), which provides that the employer is entitled to credit for the employer-funded portion of payments to the injured employee "pursuant to a disability plan, a wage continuation plan, or from a disability insurance policy established or maintained by the same employer." The ALJ held that leave time constituted a "wage continuation plan," but provided no analysis or citations to the record. The only reference in the record to a "wage continuation plan" is on the Form 243 filed by the employer seeking the credit. The statute requires more of a showing from the employer.

For example, in concluding that OCGA § 34-9-243 (b) did not allow credit for retirement benefits, "regardless of whether such benefits are paid in the ordinary course of retirement, or for an early retirement brought on by disability," the Supreme Court of Georgia held that "the intent of the statute was to enable an employer to take credit for payments received by the employee only pursuant to an employer funded disability plan, wage continuation plan, or disability insurance policy." *City of Waycross v. Holmes*, 272 Ga. 488, 489 (532 SE2d 90) (2000).

While we held in *State of Ga. v. Head*, supra, 163 Ga. App. 842, that the employer was entitled to credit for the payment of salary during periods of annual and sick leave, the distinction in that case is that the employee worked for the state. Being a state employee, the Rules and Regulations of the State Personnel Board specifically provided that the state was entitled to workers' compensation income benefits credit for wages paid under sick and annual leave, unless the employee elected in writing to forego his sick leave privilege and accept only the workers' compensation income benefits. Id. at 843-844. The State Personnel Board Rules and Regulations do not apply in this case, and therefore *Head* is not controlling authority.

Further, neither *Walton County Bd. of Commrs. v. Williams*, 171 Ga. App. 779, 780 (320 SE2d 846) (1984), nor *K-Mart Corp. v. Anderson*, 166 Ga. App. 421, 424 (2) (304 SE2d 526) (1983),[1] require

---

[1] Superseded by statute on other grounds, *Porter v. Ingles Market*, 219 Ga. App. 145, 146 (1) (b) (464 SE2d 212) (1995).

a different result. In *Walton*, the issue of leave time did not arise; we merely held that, because the employee continued to receive his wages, he was not entitled to income benefits. If Glisson had similarly simply continued to receive her wages while she was unable to work because of a compensable injury, our inquiry would stop. Instead, Glisson used up her leave time, which is an employee benefit, not a regular wage. In *K-Mart*, the employee received his wages because he continued to work, so of course he was not entitled to receive workers' compensation income benefits during that same period.

The rest of OCGA § 34-9-243 (b) makes it clear that the employer should only receive credit for certain categories of payments, providing that the determination of "[t]he employer funded portion shall be based upon the ratio of the employer's contributions to the total contributions to such plan or policy." No record evidence in this case shows that the employer contributed to a wage-continuation disability plan. Apparently, the employer provided vacation, sick, and personal leave to all its employees regardless of their disability status, and therefore that leave time did not constitute payments for which the employer should receive credit.

The employer argues, as the appellate division held, that allowing workers' compensation benefits in this situation would give the employee an improper double payment. But the burden was on the employer to show that it was entitled to a credit under OCGA § 34-9-243, and it did not meet this burden. Apparently, previous workers' compensation board rules required the employer to indicate on the forms WC1 or WC2 that the employee elected to receive salary in lieu of weekly benefits, and "absent compliance with the board's duly authorized rules, an employer was not entitled to a credit for salary paid to an employee in lieu of workers' compensation disability benefits." *Davis v. Union Camp Corp.*, 188 Ga. App. 36, 37 (1) (371 SE2d 898) (1988). While no current rules apparently require the employer to show an employee election, it would be unfair to require an employee who did not know she was entitled to income benefits to use up her employee benefits, to her detriment, without having made a conscious choice to do so.

Further, Board Rule 220 (c) does not demand a different finding. Rule 220 relates to OCGA § 34-9-220, which prescribes the period of incapacity required before compensation is due.[2] Subsection (c) provides that "[a]n injured employee who receives regular wages during

---

[2] No compensation shall be allowed for the first seven calendar days of incapacity resulting from an injury, including the day of the injury, except the benefits provided for in Code Section 34-9-200; provided, however, that, if an employee is

disability shall not be entitled to weekly benefits for the same period." The employer has produced no evidence in this case that Glisson received her "regular wages"; in fact, the only evidence in the record, from Glisson, is that she used up her leave time, which is not the same thing as receiving her regular wages.

This court and the Supreme Court of Georgia have denied credit to employers in other situations that may be instructive. For example, employers are not entitled to a credit for disability retirement benefits (*City of Waycross v. Holmes*, supra, 272 Ga. at 489; *City of Atlanta v. Arnold*, supra, 246 Ga. App. at 763 (1)); for disability pension benefits (*Brannon v. Ga. Bureau of Investigation*, 146 Ga. App. 524, 525 (246 SE2d 511) (1978)); or for death benefit payments under an employee benefit plan (*Southern Bell Tel. &c. Co. v. Hodges*, 164 Ga. App. 757, 762 (4) (298 SE2d 570) (1982)). None of those benefits are "[an employer funded] disability plan, . . . wage continuation plan, or . . . disability insurance policy" under OCGA § 34-9-243 (b).

Therefore, because Glisson was entitled to TTD benefits, and because the employer failed to establish that it was entitled to credit for employer-funded payments under a disability plan, wage continuation plan, or disability insurance policy, or that Glisson was paid her regular wages, the superior court erred in affirming the decision of the appellate division.

*Judgment reversed. Blackburn, P. J., Eldridge and Adams, JJ., concur. Ruffin, P. J., concurs in part and dissents in part. Andrews, P. J., and Mikell, J., dissent.*

RUFFIN, Presiding Judge, concurring in part and dissenting in part.

I agree with the majority that Glisson has established that she is disabled. Accordingly, she is entitled to temporary total disability (TTD) benefits and the State Board of Workers' Compensation and superior court erred in concluding otherwise. Unlike the majority, however, I believe that the employer should be able to take credit for the salary Glisson was paid. Thus, I also dissent in part.

I do agree that the threshold issue is Glisson's entitlement to workers' compensation income benefits. Pursuant to OCGA §§ 34-9-261 and 34-9-262, an employee is entitled to payment of such benefits while there exists a "disability to work resulting from . . . injury." As noted by the dissent, "disability" for Workers' Compensation purposes connotes an *economic* injury.[3] Because Glisson used sick and

---

incapacitated for 21 consecutive days following an injury, compensation shall be paid for such first seven calendar days of incapacity.

[3] See *Ga. Pacific Corp. v. Wilson*, 225 Ga. App. 663, 666 (3) (484 SE2d 699) (1997); *City of*

personal leave and was thus paid, the dissent essentially concludes that she was not economically injured. I disagree.

Personal leave and sick leave are benefits of employment that are of economic value to employees.[4] Since a disabled employee likely would receive more money by using sick leave or vacation pay to compensate for time away from work, an employee should retain the *option* of utilizing such leave in lieu of receiving workers' compensation benefits.[5] However, an employee who is *required* to forego such benefits in lieu of receiving workers' compensation benefits sustains an economic injury.[6] For example, if Glisson must miss work due to illness or injury unrelated to her employment, her economic ability to weather the storm is compromised because she used personal leave when she was entitled to receive workers' compensation income benefits.[7] Accordingly — whether it is by virtue of her work injury or her use of personal leave in lieu of workers' compensation benefits — Glisson has sustained an economic injury and is entitled to TTD benefits.

Nonetheless, I do not believe that she is entitled to TTD benefits in addition to the salary she has been paid pursuant to her personal leave benefits. As this Court recently reiterated, "[t]he Workers' Compensation Act is to be liberally construed to protect both employees and employers. And we are to interpret the Act, if its language will permit, so as not to deny its benefits to either employee or employers."[8]

Here, I believe the majority interprets the Act in such a way as to deprive the employer of its benefits. It does so by focusing solely on whether Glisson's continued receipt of wages through personal and sick leave constitutes a "wage continuation plan" under OCGA § 34-9-243 (b). However, I believe the employer is entitled to a credit under subsection (a), which provides, in pertinent part, that "[t]he payment by the employer . . . to the employee . . . of any benefit when not due or of salary or wages . . . during the employee's disability shall be

---

*Atlanta v. Gentry*, 184 Ga. App. 8, 9 (360 SE2d 611) (1987).

[4] Cf. *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1) (511 SE2d 284) (1999) (recognizing that vacation pay and severance pay constitute compensation).

[5] See OCGA § 34-9-261 (for April 2000 injury, TTD benefits are capped at $350); *State of Ga. v. Graul*, 181 Ga. App. 573, 574 (353 SE2d 70) (1987) (physical precedent only).

[6] According to Glisson, she was unaware that she was entitled to workers' compensation income benefits. Thus, she could not have elected to receive such benefits in lieu of her salary.

[7] But see *State of Ga. v. Head*, 163 Ga. App. 842, 843-844 (1) (296 SE2d 157) (1982) (employee not entitled to workers' compensation benefits where State Personnel Board Rules and Regulations require employee to exhaust sick and annual leave before receiving such benefits).

[8] (Punctuation and footnote omitted.) *Gulf States Underwriters &c. v. Bennett*, 260 Ga. App. 699, 702 (2) (580 SE2d 550) (2003).

credited against any payments of weekly benefits due." Glisson clearly was paid her regular salary for days that she missed as a result of her work injury.[9]

The cases the majority cites to support its position that the employer is not entitled to a credit under subsection (a) do nothing to dissuade me. Neither *Caldwell v. Perry*[10] nor *Horizon Indus. v. Carter*[11] involves a situation in which an employee received their regular salary while claiming entitlement to workers' compensation benefits. Thus, the cases are simply inapposite. Moreover, I disagree that the employer failed to meet its burden of proof. Since Glisson was claiming entitlement to benefits, *she* bore the burden of proving the amount of benefits to which she was entitled.[12] Although the employer bears the burden of establishing the amount of the credit,[13] this amount is not in dispute. As Glisson admittedly received her salary the entire time she missed work, the employer is entitled to a credit in an amount equal to her salary.

Finally, I note that the Workers' Compensation Act authorizes the State Board to "make rules, not inconsistent with this chapter, for carrying out this chapter."[14] One such rule provides that "[a]n injured employee who receives regular wages during disability shall not be entitled to weekly benefits for the same period."[15] In other words, an employee must elect to receive either weekly benefits or regular wages, but not both. Such rule makes intuitive sense, as the humanitarian purpose of the Act is not served by penalizing employers by requiring them to pay twice and by providing unintended windfalls to workers.[16]

MIKELL, Judge, dissenting.

Because I believe that the Appellate Division of the State Board of Workers' Compensation correctly denied Phyllis L. Glisson's petition for total disability and temporary partial disability ("TPD") benefits for various periods of time between April 8, 2000, the date of her injury, and May 31, 2002, I respectfully dissent.

---

[9] Although the majority contends that "personal leave time" constitutes something other than wages, I find this contention unpersuasive. While on leave, Glisson received her regular salary, and she conceded as much during the hearing before the administrative law judge.

[10] 179 Ga. App. 682 (347 SE2d 286) (1986).

[11] 188 Ga. App. 194 (372 SE2d 301) (1988).

[12] See *Dan Vaden Chevrolet v. Mann*, 234 Ga. App. 500, 501 (1) (506 SE2d 653) (1998). Indeed, Glisson's testimony as to the time she missed as a result of her work injury was equivocal, and the ALJ was unable to state with clarity the amount of TTD benefits she was owed. On appeal, Glisson contends she missed 52.75 days.

[13] See *Horizon Indus.*, supra.

[14] OCGA § 34-9-60 (a).

[15] State Board of Workers' Compensation Rule 220 (c).

[16] See *Wet Walls, Inc. v. Ledezma*, 266 Ga. App. 685, 689-690 (5) (598 SE2d 60) (2004).

Glisson appeals the superior court's judgment affirming the appellate division's conclusion that Glisson was not entitled to these benefits because she received her full salary in the form of accrued leave while she was injured. In her only enumerated error, Glisson argues that the appellate division's conclusion was erroneous and had the effect of allowing her employer to receive credit for her elective use of vacation and sick leave.

Normally this Court reviews workers' compensation awards under the "any evidence" standard.[17] However, when an appeal involves an application of law to undisputed facts, we use the de novo standard of review.[18] The facts in this case are undisputed. The record shows that at the relevant time, Glisson was employed in public relations at Rooms To Go. On April 8, 2000, Glisson suffered work-related injuries to her right upper body, which caused her to miss 52.75 days from work. In June 2002, Glisson was assessed a five percent permanent partial disability ("PPD") rating. As a result, she received PPD benefits from July 8, 2002, through September 13, 2002, in the amount of $233.35 weekly, based on her average weekly wage of $350. Prior to July 8, 2002, however, she continued to receive her regular salary for the days she missed from work by utilizing her accrued vacation and sick days. On August 27, 2002, Glisson's employer requested a credit for the payments that Glisson received through its wage continuation plan, pursuant to OCGA § 34-9-243.

Glisson's hearing before the State Board of Workers' Compensation (the "Board") occurred on October 23, 2002. The administrative law judge ("ALJ") who presided over the hearing awarded Glisson temporary total disability ("TTD") benefits for the time she missed due to her injuries, ruled that the employer was entitled to credit for the wages paid to Glisson during that same time, and denied her request for TPD benefits. The appellate division vacated the award and concluded that Glisson was not entitled to TTD income benefits, stating that "[w]hen an employee receives her regular salary, we find the employee is not economically disabled as a result of her injury." The appellate division also denied the employer's request for a credit.

In reaching its decision, the appellate division relied on OCGA § 34-9-104 (a) (1), which governs the modification of awards in the event of a change in condition. In pertinent part, the statute provides that "the term 'change in condition' means a change in the wage-earning capacity, . . . which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or

---

[17] *Metro Interiors v. Cox*, 218 Ga. App. 396, 398 (461 SE2d 570) (1995).
[18] *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003).

otherwise." The appellate division concluded that the employer's payment of weekly PPD income benefits and Glisson's regular salary established Glisson's claim "by otherwise" under OCGA § 34-9-104 (a) (1). In other words, the payments were compensation for the injury since the employer knew about the injury. Moreover, the appellate division reasoned that "the intent behind the Act, the corresponding Board Rules and OCGA § 34-9-243 is to limit the employer's liability for a work related injury to one recovery." (Citation and footnote omitted.) Finally, it found that the employer was not liable for these payments because under Georgia Rule 220 (c) "[a]n injured employee who receives regular wages during disability shall not be entitled to weekly benefits for the same period." Therefore, it concluded that Glisson was not entitled to TTD income benefits.

The superior court concluded that "the Appellate Division . . . was correct in their assessment that the intent behind the Act is to limit the employer's liability for a work-related injury to one recovery." Since Glisson received her regular salary in lieu of workers' compensation benefits, then received PPD income benefits, the court concluded that she was not entitled to TTD income benefits for the same period of time.

Glisson has failed to cite any authority to support her position that she was economically disabled and entitled to TTD. She is required to show that she was economically disabled by the use of her accrued leave in lieu of workers' compensation benefits, and she has not done so.[19] Instead, Glisson argues at length that her employer failed to prove that she received her regular salary during the time that she missed from work. Consequently, she maintains that there was no evidence that she received her salary in lieu of workers' compensation benefits. However, the record, in the form of Glisson's own testimony, shows that she was compensated at her regular salary for her lost time. The fact that she was compensated in the form of accrued leave is inapposite here.[20] Further, the record establishes that the payments she received were substantially higher than the amount she would have been paid through workers' compensation.[21] Therefore, the judgment of the superior court upholding the award of the appellate division should be affirmed.

---

[19] *City of Atlanta v. Arnold*, 246 Ga. App. 762, 764 (2) (542 SE2d 181) (2000).

[20] See generally *State of Ga. v. Graul*, 181 Ga. App. 573, 574 (353 SE2d 70) (1987) (court ordered employer to pay workers' compensation benefits to employee after that employee exhausted sick and annual leave benefits).

[21] The record shows that the parties stipulated that the amount she would be entitled to under workers' compensation would be $233.35 a week while the lower courts found that she was paid more than that for the days in question.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED DECEMBER 1, 2004 —

*Callaway, Braun, Riddle & Hughes, R. Kran Riddle*, for appellant.

*Shivers & Associates, Robert K. Hardeman*, for appellee.